Case number 221466, Olisemeka v. United States. Okay, I got it. Ms. Trevely? Trevedy? I'm sorry. Good morning, Your Honor. Rhea Trevedy from the Law Offices of Ronald L. Kuby for Mr. Olisemeka. Since being placed in removal proceedings in 2008, my client has done everything within his power to be reunited with his children and his entire family, all of whom are U.S. citizens. Were it not for the ineffective assistance of Immigration Counsel and the subsequent ineffective assistance of Criminal Defense Counsel, he would today be a lawful permanent resident. Mr. Olisemeka asks this Court to essentially adjudicate the motion to dismiss that Defense Counsel should have filed, to find that he can satisfy all three prongs of 1326D, and as such that he was entitled to Defense Counsel, who took some steps towards investigating the legitimacy of that strategy. It simply cannot be that constitutional due process requires that a collateral attack be available to non-citizens charged with illegal reentry, and that that collateral attack, if successful, leads to dismissal of the indictment with prejudice, an extraordinary remedy, but that that non-citizen simultaneously not be entitled to Defense Counsel, who, as a constitutional matter, has taken some steps to investigate that collateral attack. So we would have to say that effective assistance counsel always requires an investigation of the underlying conviction? Your Honor. Excuse me. The cause of the removal? Not the underlying conviction, excuse me. The underlying removal? Your Honor, because Defense Counsel in this case did nothing, I think it's within this Court's purview to find that some- Well, nothing is nothing. The record below shows that he had conversations with his client, and nothing that his client told him led him to believe that there was anything irregular with regard to the removal proceeding. Respectfully, Judge, Defense Counsel has admitted that he didn't ask his client a single question about the underlying removal order. He didn't ask- We can look at what he alleged to the quorum notice, but I don't think he alleged, I don't think your client alleged that he told him that there were problems with the removal proceeding at the time that he was considering the fast-track adjudication, and that he, A, asked him to inquire, to look into the fact as to the legality of his removal, or B, how inappropriately his counsel acted in the removal. And I don't see any of that with regard to an allegation of fact that was put before the district court. Was there? Defense Counsel didn't ask, Judge, respectfully. My client didn't- So the trick, that's what I asked you. So the rule that comes out is that counsel must ask. Correct, Judge. When the remedy that is available is this extraordinary. Okay. That it is simply inefficient, sorry, it's insufficient for Defense Counsel to simply present someone charged with illegal reentry with two options, to say you can either engage in, quote, lengthy pretrial litigation to challenge the underlying removal, end quote, which are Mr. Austin's words, Defense Counsel's words about what he offered my client, or you can fast-track a plea and get out of jail. Judge, the problem with advising a client in that way is that it's not clear at all that the remedy, if you pursue the, quote, lengthy pretrial litigation, is dismissal of the indictment with prejudice. You beat the case. Certainly, yes, then you're transferred into ICE custody. But if you're my client in 2017, you then have a valid claim to a green card. Judge, there is no- I thought your client's concern at the time was with getting out as soon as possible because of health concerns. That was what he and his family expressed to their prior counsel and what he successfully got for him through the fast-track process. Judge, Defense Counsel has admitted that he believed that no matter what happened in the illegal reentry case, my client was going to be deported. He then misadvised my client. If the only criterion by which my client was advised was the period of incarceration that he would suffer, certainly it became my client's number one priority to get out of jail. Was it not the number one priority? No, Judge, no. And the logic of Padilla, the logic of J. Lee is that you have to advise noncitizens as to the deportation consequences of the options before them because it is often the case that noncitizens will suffer extraordinary periods of incarceration or risk extraordinary periods of incarceration in order to secure their long-term presence in the United States with their families. My client is such a person. But by Mr. Austin's own admissions, he never sat my client down and said, you can engage in lengthy pretrial litigation, the duration of which you'll be incarcerated for, but that is your only hope at preserving your lawful claim to a green card and remaining in the United States forever, which is very clearly my client's overriding interest. My client, Your Honor, suffered traveling through 10 countries to be reunited with his children after being deported unlawfully in 2008. He did have an injury. Didn't he need medical care at the time that he spoke to his counsel? Judge, without question, my client would have been in a difficult situation had he been a... And his brother said, get him out. Didn't his brother say? His brother's exact words, Your Honor, were please help him get out of jail ASAP and hopefully back to us here. The overriding interest of my client and his family was to remain in the United States. Certainly, when being told that the only consideration on the table is the time you are spending behind bars, anyone, Your Honor, anyone in that circumstance would say get me out of jail now because my deportation case is functionally hopeless. That's what you're communicating to me. But the truth is, Judge, my client's deportation case was not hopeless. He had an approved I-130. If he had moved to dismiss the illegal reentry indictment, if he had been successful, and there is a wealth of evidence to suggest that he could have been successful, not only the disbarment of his immigration lawyer, the now setting aside of that removal order because it was found to be fundamentally unfair, if he had made that... Wait a second. The removal order is not yet set aside. It is, Judge. And didn't you have a hearing just two days ago on this? Wasn't there a hearing scheduled for the 22nd of May? Correct, Judge. My client's in ongoing removal proceedings. Right. So we don't know whether the original determination of removal will be reaffirmed, do we? Judge, the order entered in 2008. His status of removal is as the time of his removal. There may be a new adjudication of it, but his status as removable is determined as by the conviction and or the record, how that fits in, correct? And he had a cat claim, right? That's part of the ineffective assistance of counsel back on the BIA proceeding, correct? Correct, Judge. My point, however, is that... If he loses that, he gets it reopened, but that's not an assurance that he wins it. No, Judge, but the finding... Because you make that leap sometimes, and I question whether you're entitled to make that leap. Judge, I think there are two things that we're discussing. One is whether the proceedings that led to my client's removal in 2008 were fundamentally unfair, which is a valid question on a motion to dismiss. And that finding has been made, Judge, which is of great significance. And district court made a fundamental error when they found that the standard that was applied to my client's administrative motion to reopen was somehow different than the question of fundamental fairness that's codified at 1326d3. They're the same question, Judge. The standard for an ineffective assistance of counsel motion to reopen in immigration court in California is, were these proceedings fundamentally unfair? And when the immigration judge granted that motion, they made a determination that those proceedings were fundamentally unfair, which is part of our argument that had criminal defense counsel... And I understand that this is confusing, but had criminal defense counsel sat my client down, had a conversation with him that said, what happened in your immigration proceedings? Were you represented? Yes. To Google that person would be to learn that they had been disbarred, disbarred for misrepresenting the eligibility for relief that noncitizens faced and failing to refund their fees, things that the facts bear out happened in this case. Had he sat my client down and had that conversation, had he pursued any line of inquiry into what happened in those underlying proceedings, he may have discovered what the immigration court has now ruled, which is that those proceedings were fundamentally unfair. And the conversation he would have had with my client would be, look, I don't know what's going to happen on a motion to dismiss. You may lose. You may really suffer behind bars. But it is your only chance of remaining in the United States. It is your only chance of living out your life with your U.S. citizen children and your entire family, all of whom reside here, all of whom are U.S. citizens. There is no one in Nigeria, not to mention his fear of return. That would have only weighed in furtherance of fighting this motion. But, Judge, my client didn't know. My client didn't know that there was an option on the table that could have kept him here. Yes, he would have had to suffer. There's no question. But the logic of J. Lee, the logic of Padilla, is that some noncitizens are truly willing to suffer to avoid the extreme consequence that deportation presents them with. All right. Thank you, Counsel. You're preserved a couple minutes for rebuttal. We'll hear from you, Governor. May it please the Court. Rajiv Dosanjh for the United States. The central question here is whether Mr. Olusemeke is entitled to the extraordinary relief of Coram Novus relief. And he has established two things. First, that his attorney in 2008, sorry, his attorney in 2017 rendered ineffective assistance of counsel under Strickland, and also that there was a reason for his delay, his significant delay in seeking Coram Novus relief. That has not been addressed by defense counsel here, petitioner's counsel here, in its briefing in appeal, and very briefly in its motion below. There really is no explanation for Mr. Olusemeke, after he had immigration counsel in early 2018, waiting four years to seek Coram Novus relief in the district court. There's just simply nothing in the record that explains this. For that reason alone, I think relief should be denied on that basis. As far as Mr. Austin, the federal defender's performance goes, he was faced with a difficult situation himself. He had a client and his client's family emphasizing to him his client's health problems. And if you look at the motion to reopen, the proceeding from 2008, there Mr. Olusemeke explains that his health during this period, when he's talking to Mr. Austin, was deteriorating drastically. So you have that problem confronting Mr. Austin. You have the ability to take advantage of the fast track program in the northern district, which would substantially lower the guidelines range and likely the sentence, and which did. Mr. Olusemeke was sentenced to six months, and that was approximately only a month, or a little more than a month, after his sentencing. I think your adversary's argument is that even so, the council still has responsibility to advise the client of the removal consequences of the course of action that he's choosing. And if you look at Mr. Austin's declaration, he did say that you potentially face deportation by taking this plea. That was something he acknowledged also in his plea agreement. He never said it? I'm sorry? He admitted that he never said that? No, I'm sorry. Mr. Austin did explain to him that the choices were either to accept the fast track or to file a motion, a pretrial motion, to challenge collaterally the 2008 removal proceeding, and explained, and this was then made clear to him also before he signed his plea agreement and before he entered his plea, that the consequences of pleading guilty to this crime were deportation. He knew that. And despite that, he never mentioned to Mr. Austin his fear of returning to Nigeria because of his sexual orientation or his tribal affiliation, the basis that he now asserts. In fact, that never came up throughout these proceedings until 2018 when he opened, he sought reopening. That's what you mean in the BIA proceeding? Right. And so Mr. Austin had no reason. So there was no pending reopening at the time of the criminal charges for the unlawful reentry? No, that was filed in January of 2018. Actually, no, I'm sorry, it was filed in July of 2018, so well after the criminal proceedings were over. And so you're having a situation where a defendant is not offering any reason for Mr. Austin to believe that there's a valid basis. And so you have kind of this issue, the issues here really turn on the question of time. And so you could have a situation, and Mr. Austin presented this option, I can try to research a way to collaterally attack the 2008 proceeding, but know that that's going to take time. Was there any indication in the record that he was aware of his counsel's issues in California at the time of the unlawful reentry? Of whether Mr. Olusemeka was aware of it? I don't believe there's any indication in the record that he was aware of his attorney. I think it's Ms. Kahn who she's referred to in the briefs. I don't think there was any indication whether or not he was aware of those issues. He was aware that- Certainly if there was some indication of that, that might then cause some concern with regard to how Mr. Austin characterized his conversations with him. In what way? I'm sorry, Aaron, I'm not- Well, Mr. Olusemeka was aware of the fact that his lawyer in California pretty much walked away from him and left him for naught. Because he ended up representing himself with regard to the removal proceeding in California, right? Right. Yeah, I read Judge Scullin's decision, which recites extensively from what occurred during the removal proceeding. If he was aware at the time that he had unlawfully reentered and was charged with a criminal charge, and he was aware that his lawyer had, of the claims that subsequently allowed for the reopening of the removal proceedings, if he was aware of that, one would have thought that he would have raised that with Mr. Austin. Your Honor, that's correct. I believe that's correct. But I would also point out that we do not know the basis for the reopening. We have a checkmark decision. We don't know whether it was based on ineffective assistance of counsel, or whether it was based on the immigration judge's discussion of his various forms of relief. And I think it's important, if you look at the... It does create the curious circumstance that subsequently at the removal proceedings vacated, and somehow he's adjudicated eligible for cap relief, what happens here? He remains convicted of unlawful reentry? I believe, Your Honor... That seems a bit bizarre. Your Honor, I believe he has an ability to seek a waiver in those situations. I'm not sure if he could come back to the district court. If, in fact, going through the entire process... I'm taking you far afield. I apologize. No, it's okay. So, in turning again for the question of timing, Mr. Olsen obtained immigration counsel in 2018. It took seven months for immigration counsel to file a motion to reopen, to look at the record, to gain the information. I think that's a good gauge of how long it would have taken Mr. Austin to have done the same thing. And again, the question is whether there is contemporary evidence in the record that Mr. Olsen Mecca, knowing that the choice he faced was, either I can do the fast track, I can get rid of this criminal charge very quickly, or I can have my attorney investigate, look into this for some unknown amount of time, and then perhaps file a motion and then go through the entire proceeding of opening the removal proceeding. That is proceedings which are still going on right now. Counsel, you heard opposing counsel say that what was missing from your recitation was that he should have been told that was the only way he would get to stay in this country with his family. Your Honor, I think he knew, though, that the consequence was deportation of pleading guilty. And so at that point, again, if he knew deportation was the consequence, you would assume that he would say, look, I'm afraid of going back. Is there anything you can do because of my sexual orientation or my tribal affiliation? What he said throughout those proceedings was, I'm afraid of going back because they don't have adequate medical care in Nigeria. There's not the economic opportunities available. He did not mention any time the basis for cat relief or the basis for withholding that he's now asserting. And it seems natural, and looking at Mr. Dawson's declaration, I'm not sure I agree that he admits never talking to Mr. Olusemeke about potential basis for removal. I think that's, I don't think he says that in his declaration. But I could be wrong, but I don't see that right now. Turning then, again, what Mr. Austin would have to do is look at then, even if he had gotten the record, and that would have taken time, look at the record in the 2008 removal proceeding. And we can look with the benefit of hindsight and say that the immigration judge has now reopened it. But that is not the timeframe you're looking at. You're looking at what Mr. Austin would have assessed. Based on looking at that record, the reasons we describe in our brief, there are significant obstacles to the viability of his reopening claim. He failed to exhaust his remedies. He waived appeal. Defense counsel here takes issue with the way that the various forms of relief were explained to Mr. Olusemeke. But I think what the important context is that you have the, there's one form, the I-589 form, that covers asylum, it covers withholding, and it covers withholding with the benefit of cat relief. When you, if you look at the context of the transcript, what I think is going on is that the administrative, the immigration judge is saying there's this form that covers these three forms of relief. I don't think there's, he's speaking in shorthand. He's not saying that withholding is only about cat relief. He's saying that there's this form that covers all three. And I think in particular, if you look at A44 and 45, he gets to the essence of this in 2008. He says, look, you can either agree to deportation or you can seek various forms of relief. And he says, you have to establish that you would be afraid to go back to Nigeria for fear that you would be persecuted or tortured. And he does mention cat and withholding of removal as two separate things. He says that they're all covered by the same form, and he refers to them occasionally in shorthand. But he does say that there's withholding for fear of persecution and there's withholding because of your fear of torture. So you argue that he was fully informed of his rights at that time? I think, Your Honor, I think what the question is is whether Mr. Austin, looking at that transcript, would have realized that he had such a strong claim that, look, you should just endure what you're enduring right now because I think we have a potential claim. I think looking at the transcript, looking at the failure to exhaust his remedies, I think there are significant obstacles that I don't think Mr. Austin's advice would have changed. Look, you can either get rid of this criminal case right now or you can, on a hope, try to challenge a removal. And, again, I think looking not with the benefit of hindsight, I think Mr. Austin's decision to support Mr. Olasuneka's choice to go for the fast track was not unreasonable performance as an attorney. You're over your time, but I want to ask one last question. Your opponent made reference to the fact that he had a green card application. Did Mr. Austin reflect that he was aware of the fact that his client had a green card application? I don't think Mr. Austin was aware of that. I believe that if reading his declaration, I don't think there's indication that he was aware of the pending green card application, which was filed by Mr. Olasuneka's sister several years before and was kind of on hold pending these other issues with his criminal convictions and the removal order. You say several days before his arrest? I'm sorry, several years. Several years? I'm sorry, I misheard you. I'm sorry. I think that he has this pending application, but the fact that it's approved, I don't think means that you're necessarily entitled to a green card. It means that it was approved pending resolution of these other mechanisms that he had to go through. Okay. Thank you. Thank you, counsel. Your rebuttal. Judge, my opponent is making the same mistake the district court made here, which is when examining the immigration record and examining what Mr. Austin should have been looking at at the time of defending my client's illegal reentry case, emphasizing only very specific cherry-picked statements made by the immigration judge. As a foundational matter, Your Honor, my client was abandoned by his attorney, an attorney he retained. This court has three times decided cases where a non-citizen had a retained lawyer, the lawyer promised to file an application for relief, an application for relief for which the non-citizen was a strong contender, and then failed to file that application and not informed the non-citizen within adequate time. That's Perez, that's Scott, that's Cerna. This court has routinely said that when a non-citizen is deprived of the effective assistance of counsel in a way that deprives them of the ability to file an application for relief for which they are an excellent candidate, that that is enough to find fundamental unfairness. That is enough to excuse them from exhausting their administrative remedies. That is enough to find that their proceedings deprive them of judicial review, which is the 1326 standard. This is not simply a question of what the immigration judge said, although I would like to take some time to just go over the statements made by the immigration judge, because they were extremely misleading. The judge at no time in these proceedings, in the 2008 immigration proceedings, said to Mr. Olusemeka, a 589 covers three forms of relief. One of them I am finding you ineligible for, that's asylum, although I will note that he did not conduct any on-the-record analysis of why he found Mr. Olusemeka ineligible for asylum, and there is a good argument that he was eligible, but setting that aside, he never said you're ineligible for asylum, but you are eligible for these other two things. These two things are fear-based relief. If you have a fear of returning to Nigeria based on protected identities, based on specific experiences you've had, that that is your, again, only chance of remaining in the United States. Instead, Judge, what the immigration judge did was he said you're ineligible for asylum, but I can give you the forms anyway. And it's not the same. This Court has said for pro se, for noncitizens who begin their proceedings pro se, that it is incumbent upon immigration judges to explain the law, to explain what the relevant facts are. I would argue that it's even more incumbent on an immigration judge who's just watched an attorney abandon her client, who's granted a motion to withdraw, that doesn't say I sat my client down, I said, look, I can't represent you anymore, but here are the deadlines for filing your 589, here's how it works, I know you're afraid to talk about this, but when you have a relief hearing, it will be confidential, there will be a closed courtroom, you don't have to have your family there if you're worried that they don't know these things about you. She didn't say any of that to her client before she withdrew, and the immigration judge granted her motion to withdraw anyway. He had just watched this person be abandoned. And instead of sitting him down again and saying, the only chance you have to remain here is to file this 589. Sure, you may be ineligible for one of three forms of relief, but there are still two alive in the case. It's your only chance. Let me ask you, if we got the cart before the horse a little bit, what if he loses after the immigration matters reopened and he loses? And he's deemed, once again, that he was removable and not eligible for cap relief or any other form of discretionary relief, what happens then? He'll be returned to Nigeria, Judge, where he has no family, where he's been persecuted. I understand that, but that's a decision on an immigration side. Correct, Judge, but that decision on the immigration side is also deeply affected by my client's conviction in this case because of the illegal reentry conviction. His otherwise lawful, current, viable claim to a green card, he's barred from it. The government is incorrect. Does this conviction then become, well, how do we measure the ineffective assistance of counsel if ultimately the removal order is once again confirmed? Judge, it's further proof of prejudice. It's further proof that it was incumbent upon Mr. Austin to ask, did you seek relief on the immigration side? What happened? Are you afraid to return? Did you make that argument in the immigration court? Why not? Are any of your family members qualifying relatives for U.S. citizenship purposes? Judge, the reason this case is so important to Mr. Owasomeka, and I believe that's what you're asking, is that were it not for his illegal reentry conviction, he would currently have a green card. But because of this illegal reentry conviction- No, what I'm asking you is that, say the hearing that allegedly started two days ago on the 22nd of May. There was an indication somewhere that the hearing was on the 22nd. Say he loses that hearing. Is his illegal reentry conviction absent or ineffective assistance to the counsel claim? From a legal standpoint, legitimized? Or has he still got a defense to it then? No, Judge, I would argue- So my argument is that he could only further demonstrate the prejudice that I'm already arguing, which is because of this conviction, because of Mr. Austin's ineffectiveness, he is left only seeking one form of relief. And if he's denied that form of relief, that he will be deported, he would have had two claims had this case been litigated properly, which is that he potentially could have moved to dismiss, been successful, and then immediately moved to adjust and gotten his green card. But he can never adjust his status and- I understand that. I understand. If the basis for his removal is confirmed in a hearing, A, that he's denied cat relief, he said he was removable and is removable, and that at the time that he was removable, he wasn't eligible for cat relief, does he still have a defense to the illegal reentry claim? Judge, I apologize. I think maybe I'm not understanding you. So I guess you're saying he does because, in essence, it vacates the determination that he's removable, and so therefore his reentry wasn't subject to a removal order? What happens if you lose in California? He's still removable, right? Yes? If he's ordered deported, his proceedings are now here, Judge. They've been transferred because of venue. If he's ordered deported here, he will be deported. Right. Then what is the step? Then would there be any opportunity to vacate his illegal reentry because of the fact that his original removal proceeding suffered from a fundamental defect? I mean, that's the question we're here to answer, Judge, because the motion to reopen has already been granted. That 2008 removal order no longer exists as a matter of law. That's what I wanted you to hear, the answer I was looking for. I apologize. He's in removal proceedings ab initio. It was probably the question, not the answer. I'm so sorry, Judge. Again, the finding that his proceedings were fundamentally unfair, all of the facts alleged in his motion to reopen, that his attorney had been disbarred, that she was ineffective, Mr. Austin could have and should have known that, should have advised my client, and there is a reasonable probability that he would have chosen to move to dismiss. Thank you. I'd like to say that I wish we had this level of advocacy on all the immigration cases that we see. It makes a difference. Thank you, Judge Cooler. I appreciate that. Nicely argued. Thank you very much. We'll take the case under advisement.